# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-3174            5:15-cv-00208-BSM
_____ 5:16-cv-00381-BRW

Tina Jimerson

*Plaintiff - Appellee*

v.

Dexter Payne, Director, Arkansas Department of Correction

*Defendant - Appellant*
_____

No. 18-2873
_____

John Brown, Jr.

*Plaintiff - Appellee*

v.

Dexter Payne, Director, Arkansas Department of Correction

*Defendant - Appellant*
_____

Appeals from United States District Court
for the Eastern District of Arkansas - Pine Bluff
_____

Submitted: November 12, 2019
Filed: April 29, 2020

_____

Before GRUENDER, KELLY, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

The Director of the Arkansas Department of Corrections ("State") appeals from the district court's grant of habeas corpus relief under 28 U.S.C. § 2254 to Tina Jimerson ("Jimerson") and John Brown, Jr. ("Brown"), Arkansas prisoners serving life sentences for murder and aggravated robbery. The State argues the district court[1] erred in granting relief as to Jimerson's Brady[2] and Youngblood[3] claims. The State argues the district court[4] erred in granting Brown relief based on multiple Brady violations; multiple Giglio[5] violations; the prosecution's failure to correct false or misleading testimony as required under Napue v. Illinois;[6] and a Youngblood violation for the "conscious shocking" and bad faith failure to preserve evidence. For the reasons that follow, we affirm the grant of habeas relief in both cases.

_____

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

[2]Brady v. Maryland, 373 U.S. 83 (1963).

[3]Arizona v. Youngblood, 488 U.S. 51 (1988).

[4]The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas.

[5]Giglio v. United States, 405 U.S. 150 (1972).

[6]Napue v. Illinois, 360 U.S. 264 (1959).

-2-

## I.    BACKGROUND

Myrtle Holmes ("Holmes") was found dead in the trunk of her car parked at her home in Fordyce, Arkansas, on September 22, 1988.  On March 16, 1990,[7] Charlie Vaughn ("Vaughn"), Brown, and Reginald Early ("Early") were charged in state court with the capital murder of Holmes.  The State alleged that the three men had acted together in committing rape and robbery, and in the course of those crimes, had caused Holmes' death under circumstances manifesting extreme indifference to the value of human life.  Approximately one year later, Vaughn pled guilty to first-degree murder.  Vaughn's guilty plea implicated Brown and Early.  Vaughn's plea also led to Jimerson being charged as an accomplice in a separate information.  The trial court consolidated the cases for trial.

Investigations undertaken on behalf of Brown and Jimerson since their convictions reveal a number of unusual issues and facts about the case, including:
- law enforcement's undisclosed use of informant Ronnie Prescott;
- an undisclosed recorded confession by co-defendant Vaughn;
- an undisclosed photo lineup identification of Brown;
- both Jimerson and Early were represented at trial by the same attorney;
- an undisclosed close familial relationship (described by the Holmes' family's private investigator as "I'll scratch your back and you'll scratch mine") between a witness, who had been sentenced to 20 years for a drug conviction in 1989, and the Dallas County sheriff, who released the witness in 1991 under the jail trustee program;

---

[7]The Arkansas Supreme Court incorrectly stated the charges were filed on March 16, 1991.

Appellate Case: 18-2873    Page: 3    Date Filed: 04/29/2020 Entry ID: 4907792

- an undisclosed relationship between the family of informant Taura Bryant, who provided critical testimony at trial, and the Holmes' family's private investigator;
- witnesses that have admitted to being so heavily under the influence of drugs at the time of the murder and trial that they have no recollection of their trial testimony;
- co-defendant Early's signed affidavit, assuming sole responsibility for the crimes; and
- an individual who was interviewed by law enforcement in 1990 and has denied under oath that he provided incriminating information contained in the interview report prepared by law enforcement.

Despite the myriad of issues contained in the record and briefing, we focus our attention on the facts giving rise to the legal issues before us. During Vaughn's guilty plea, Vaughn told the judge that Jimerson, Brown, and Early picked him on the night of the murder because they wanted to do a robbery. Jimerson drove to Holmes' house. Vaughn reported that none of the men had prior knowledge of Holmes and that the residence had been randomly selected. According to Vaughn, all three of the men raped Holmes and then Brown killed her. At trial, Vaughn recanted the statements he had made that formed the factual basis for his guilty plea, repeatedly testifying that he had "nothing to say." He explained his recantation by saying he made the confession because he was scared he would get the death penalty so he followed what "y'all said." He clarified that "y'all" referred to his attorney. The prosecutor read the factual basis for Vaughn's guilty plea to the jury. Scientific evidence presented at trial was inconsistent, in part, with Vaughn's statements about Holmes being raped. The DNA collected from Holmes' body was from a single source. A doctor testified that the collected DNA had been compared to samples taken from Vaughn, Early, and Brown. He testified that Vaughn and Brown had been

-4-

excluded as contributors, but Early could not be excluded as the contributor.  No physical evidence connected Vaughn, Brown, or Jimerson to the crime.

When Jimerson was charged a couple days after Vaughn's guilty plea, Jimerson's attorney, who also represented Early, filed discovery motions, requesting information concerning informants and whether any informants had requested or were offered immunity, leniency, sentence or charge concessions, or other inducements. He also requested video and audio recordings of the co-defendant's confession.  In addition, he asked for "any material or information within [the prosecuting attorney's] knowledge, possession or control, or in the hands of any law enforcement agency, that could negate the guilt of the defendant of the offense charged or could reduce the punishment therefore."  The then-deputy prosecuting attorney responded that the informant referred to as "Sam" was Taura Bryant, and the only recordings were of conversations with two witnesses who were brothers and video of the crime scene. The prosecutor also said that the State had no knowledge of any informant whose information led to or assisted in making an arrest and that no offers of immunity, leniency, sentence or charge concessions, or other inducements were made to any co-defendant, potential witness, or informant other than the offer made to Vaughn.

The first trial ended in a mistrial when the jury hung on a six-to-six split.  The State dropped the rape charge and amended the informations to charge Brown, Early, and Jimerson with first-degree murder and aggravated robbery.  With the alleged rape off the table, no DNA evidence was presented at the second trial.  A jury returned guilty verdicts for all three on both charges, and each was sentenced to life in prison. In 1994, all three judgments of convictions on both charges were affirmed on appeal. Brown v. State, 869 S.W.2d 9 (Ark. 1994).

Neither Brown nor Jimerson filed petitions for certiorari in the United States Supreme Court, or filed with any court any other petitions, applications, or motions

challenging their conviction until these habeas petitions were filed in the Eastern District of Arkansas.  Jimerson filed her petition on June 30, 2015.  Brown filed his petition on December 21, 2016.

Jimerson asserted in her petition that her conviction had been obtained contrary to the Fourteenth Amendment Due Process Clause because the police and prosecution failed to disclose exculpatory or impeaching evidence prior to trial in violation of Brady v. Maryland, 373 U.S. 83 (1963), and because law enforcement destroyed evidence in bad faith in violation of Arizona v. Youngblood, 488 U.S. 51 (1988).  The allegations for these claims were based primarily on information developed through the efforts of private investigator Greg Stimis, at the direction of Jimerson's counsel.

On January 7, 2014, Stimis went to Fordyce to obtain the case file.  While there, he met with Dallas County Sheriff Ford.  Sheriff Ford told Stimis about law enforcement's use of a previously undisclosed informant to obtain Vaughn's confession.  Sheriff Ford informed Stimis that, while transporting a prisoner from Texas to Arkansas on an unrelated drug charge, the prisoner asked if there was anything he could do to help his situation.  Sheriff Ford responded that law enforcement could use the prisoner's help to get information about a murder.

When he arrived in Arkansas, the prisoner was placed in Vaughn's jail cell. Sheriff Ford recalled that when the prisoner-turned-informant told him that he got a confession from Vaughn, the Sheriff sent the prisoner/informant back to the jail cell with a recording device.  According to Sheriff Ford, Vaughn confessed again on tape. Sheriff Ford said that the prosecutor determined the recording was inadmissible and he thought that the tape "was gone," either lost or destroyed.  When Stimis contacted Sheriff Ford after the January 2014 meeting to get the informant's name, the Sheriff told Stimis he could not identify the informant.  Sheriff Ford subsequently quit responding to Stimis' email messages.

-6-

On January 27, 2014, Stimis made a Freedom of Information Act request to the Arkansas State Police ("ASP") for its files on the Holmes investigation. Approximately three weeks later, Stimis received the file, which consisted of about 210 pages of redacted documents. In that file was a one-page report of an interview occurring on March 24, 1991, with a man named Ronnie Prescott. While the report did not indicate details about the interview, it referenced a handwritten statement taken from Prescott that was to be made part of the file. Prescott's statement was not included in the documents Stimis received.

On June 24, 2014, Jimerson's counsel located Prescott and talked to him by phone at a federal prison in South Carolina. Counsel confirmed that Prescott was the informant to whom Vaughn confessed and the confession had been recorded. On July 11, 2014, counsel met Prescott in person. Prescott signed an affidavit detailing his cooperation with law enforcement in the Holmes murder investigation.

Approximately six months later, on January 7, 2015, Jimerson's counsel met with Captain Steven Coppinger at the ASP headquarters. Counsel saw for the first time a handwritten statement bearing Prescott's signature and dated March 24, 1991. The statement was co-signed by then-Fordyce Chief of Police Ronnie Poole and then-ASP Lieutenant Bradshaw. Prescott has testified that he did not write the statement. The statement did not reflect that Prescott recorded any conversations with Vaughn.

On April 26, 2015, Jimerson's original trial counsel signed a statement confirming that he knew nothing about a jailhouse informant or any tape recorded conversations with Vaughn. While Jimerson was working on gathering evidence for her habeas claim, the Innocence Project was working on co-defendant Early's case. In 2012, the Innocence Project had accepted representation of Early. Some four months after Jimerson filed her petition, Early came forward and took sole responsibility for the crimes. Early had professed his innocence until shortly after his

counsel filed a motion to have the DNA retested, utilizing new technology that could perhaps definitively identify the source, rather than simply exclude potential contributors. About a week after the motion was filed, on October 27, 2015, Early called his counsel and told her that he was the only one involved in Holmes' murder. He signed an affidavit admitting guilt on December 21, 2015. He attested: "Neither Mr. Vaughn, Mr. Brown, nor Ms. Jimerson were involved in these crimes in any way. They are currently serving life sentences for crimes that they did not commit. I am solely responsible for raping Ms. Holmes, and I am solely responsible for her murder." He then detailed in his affidavit how and why he committed the crimes. It was not until December 22, 2015, that Early's counsel told co-defendants' counsel about Early's confession.

On January 26, 2016, Jimerson moved to amend her petition to add an actual innocence claim. On December 21, 2016, Brown filed his habeas petition, asserting a claim of actual innocence, <u>Brady</u> violations for concealing evidence and failing to disclose evidence, a <u>Youngblood</u> claim for bad faith failure to preserve evidence, a Fourteenth Amendment Due Process violation for the prosecution's failure to correct false evidence when it appeared in the record, and a claim of ineffective assistance of trial counsel.

The magistrate judge in Jimerson's case held an evidentiary hearing and so did the magistrate judge in Brown's case. Prescott's testimony was similar to statements Sheriff Ford made to Jimerson's investigator, although there are some notable differences. Prescott testified that Sheriff Ford gave him a tape recorder and "the little cassette that goes in it" right away when they arrived at the Dallas County jail. According to Prescott, Sheriff Ford told him "[t]o try to get the inmate that he was putting me in the cell with to talk about the incident that happened and to see what information I could gather from him." Prescott was incentivized by Sheriff Ford because if Prescott was successful in obtaining information about Holmes' murder,

-8-

his pending case "would be gone" and he "wouldn't have to worry about that anymore."  Prescott testified that he had three, possibly four conversations with Vaughn over the four or five days they were in the same cell.  While Prescott was working to gather information, at one point he met with Sheriff Ford and suggested that perhaps Prescott would appear more credible if he engaged Vaughn in an argument.  After Vaughn confessed to Prescott, Prescott gave the recorder to Sheriff Ford and, while in Prescott's presence, Sheriff Ford played a little bit of the recording to make sure it was audible.  Sheriff Ford then took custody of the recorder and tape.  Prescott went back to his cell, stayed for a little bit, and then his wife picked him up that evening after his bondsman had posted his bond.

The magistrate judge assigned to Jimerson's case recommended denial and dismissal of her petition.  The magistrate judge assigned to Brown's case also recommended denial and dismissal of his petition.  The district judge granted Jimerson's habeas petition as to her Brady and Youngblood claims, denied her actual innocence claim, vacated her convictions, and ordered her released from jail.  The district judge granted Brown's habeas petition, vacated his convictions, and gave the State 30 days to release Brown or commence new criminal charges against him.  The district court denied the State's motion for a stay in both cases, so both have been released from custody.  The State timely appealed both cases, which we have consolidated.

## II.   DISCUSSION

On appeal of a district court's decision on a petition brought under 28 U.S.C. § 2254, we review the court's findings of fact for clear error and its legal conclusions *de novo*.  White v. Steele, 853 F.3d 486, 489 (8th Cir. 2017).  We review a district court's decision to grant, deny, or limit the scope of an evidentiary hearing during habeas proceedings for abuse of discretion.  Nooner v. Hobbs, 689 F.3d 921, 938 (8th

Cir. 2012).  Precisely when Jimerson and Brown developed the factual predicate for each of their claims required the district court to make fact findings.  The court did not abuse its discretion in holding evidentiary hearings on the habeas petitions to determine the State's timeliness defense.  Schlup v. Delo, 513 U.S. 298, 332 (1995) (noting in the context of a habeas petition the "fact-intensive nature of the inquiry" and the district court's ability to take testimony from key witnesses).  Additionally, 28 U.S.C. § 2254(e)(2) does not preclude the district court from holding a hearing on the merits of at least Brown's and Jimerson's Youngblood claims because Brown and Jimerson were not at fault for their failure to develop the claim in state court.  Williams v. Taylor, 529 U.S. 420, 434–36 (2000) (determining § 2254(e)(2) does not bar evidentiary hearings for prisoners with meritorious claims not developed in state court simply because the prosecution's conduct, such as concealing facts, went undetected in state court).

A.    **Timeliness**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") habeas petitioners have one year from the latest of four triggering events to file a petition for habeas relief in federal court.  28 U.S.C. § 2244(b)(1).  The State has asserted both petitions are time-barred.  Brown and Jimerson contend their petitions were timely filed under § 2244(d)(1)(D), which starts the limitations period as of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  "The factual predicate of a petitioner's claims constitutes the vital facts underlying those claims."  Earl v. Fabian, 556 F.3d 717, 725 (8th Cir. 2009) (quoting McAleese v. Brennan, 483 F.3d 206, 214 (3d Cir. 2007)).  "Section 2244(d)(1)(D) does not convey a statutory right to an extended delay while a habeas petition gathers every possible scrap of evidence that might support his claim."  Id. (cleaned up).  We must keep in mind that "a desire to see more information in the hope that something will turn up differs from the factual

-10-

predicate of a claim or claims." Id. (quoting Johnson v. McBride, 381 F.3d 587, 589 (7th Cir. 2004)).

### 1.   Tina Jimerson

We conclude that the factual predicate for Jimerson's Brady claim, Youngblood claim, and actual innocence claim developed at different times. Jimerson discovered the vital facts of her actual innocence claim when Early confessed in December 2015 to being the sole perpetrator of the crime. Jimerson brought her actual innocence claim in an amended petition filed just over a month after Early signed an affidavit confessing to the crimes. To the extent that a freestanding actual innocence claim may be recognized in a habeas proceeding,[8] Jimerson filed her actual innocence claim within one year of the date the factual predicate was discovered, so the claim, if cognizable, would be timely under § 2244(d)(1)(D).

To establish a Brady violation, Jimerson must show that the prosecution suppressed evidence that was favorable to her and material to either guilt or punishment. Keys v. United States, 943 F.3d 1152, 1154 (8th Cir. 2019) (citation omitted). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. (quoting United States v. Ladoucer, 573 F.3d 628, 636 (8th Cir. 2009)). Before Jimerson's private investigator spoke with Sheriff Ford on January 7, 2014, Jimerson had no way of knowing that law enforcement recruited the assistance of another prisoner to act as an informant in jail, that law enforcement provided the means to record conversations with Vaughn, and that the informant's

---

[8]McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) (affirming actual innocence exception may be invoked to overcome the AEDPA statute of limitations, but declining to decide whether it should be recognized as a freestanding claim).

cooperation would result in the complete dismissal of the informant's pending charge. Jimerson's counsel served broad discovery requests on the prosecutor regarding informants and anyone else who had been offered leniency, sentence or charge concessions, or other inducement. In response, the prosecutor disclosed Taura Bryant ("Sam"). He did not disclose the existence of Prescott, a prisoner-turned-informant who actually had his pending charges dismissed in exchange for his assistance in the investigation of Holmes' murder. The prosecutor's file did not contain the tape recording made by Prescott or any information indicating law enforcement had used Prescott to obtain information from Vaughn about Holmes' murder. As found by the magistrate judge in Jimerson's case: "There is no question that the prosecutor's responses to trial counsel's discovery requests in this case were misleading at best, and arguably untruthful."

After the meeting on January 7, 2014, Stimis and Jimerson's counsel pieced together more information about the undisclosed informant, including his identity, over the next several months. On June 24, 2014, Jimerson's counsel talked directly with Prescott on the telephone. Prescott confirmed that he was the informant who spoke with Vaughn and reinforced that he had made a recording of his conversations with Vaughn.

Since the identity of the informant was still unknown to Jimerson in January 2014, Jimerson had not yet obtained vital facts surrounding her Brady claim. It is indisputable, however, that once Jimerson's counsel identified the informant by name and talked directly with him, Jimerson had discovered the factual predicate for her Brady claim. See Martin v. Fayram, 849 F.3d 691, 697 (8th Cir. 2017) (explaining the fact that a petitioner may have wanted to develop additional evidence does not mean she was not actually aware of the vital facts to present her claim). Jimerson has not shown anything that would have prevented her from filing a petition alleging a

-12-

<u>Brady</u> violation after she spoke with Prescott, and amending it later if additional information became available.

The limitations period for Jimerson's <u>Brady</u> claim started to run on June 24, 2014.  She filed her petition on June 30, 2015, after the one-year limitations period had expired.  Counsel's negligence in failing to file a timely petition is not an extraordinary circumstance warranting equitable tolling.  <u>Rues v. Denney</u>, 643 F.3d 618, 622 (8th Cir. 2011) (refusing to apply equitable tolling when attorney missed the deadline for filing habeas petition under § 2254 by fourteen days).  Jimerson's <u>Brady</u> claim is time-barred.

The timeliness of Jimerson's <u>Youngblood</u> claim presents a much closer question.  Under <u>Youngblood</u>, the prosecutor has a duty to preserve potentially useful evidence for trial.  <u>Ferguson v. Roper</u>, 400 F.3d 635, 638 (8th Cir. 2005). <u>Youngblood</u> applies to the bad faith loss or destruction of evidence before trial.  <u>Id.</u>

At the meeting on January 7, 2014, Jimerson's investigator learned that a recording was made of Prescott's conversations with Vaughn, but it likely no longer existed.  Jimerson had no evidence to support a claim that the loss or destruction of this evidence was in bad faith.  A failure to preserve evidence resulting from mere negligence does not give rise to a <u>Youngblood</u> violation.  <u>United States v. Houston</u>, 548 F.3d 1151, 1155 (8th Cir. 2008) (citing <u>United States v. Iron Eyes</u>, 367 F.3d 781, 786–87 (8th Cir. 2004)).

In February 2014, when the ASP responded to Jimerson's request for the file, there was a note that a handwritten statement was taken from Prescott, but the statement was not turned over to Jimerson.  It was not until January 7, 2015, when Jimerson's counsel met with ASP Captain Steven Coppinger, that Jimerson was able to gain access and review Prescott's statement.  The handwritten statement contained

-13-

Prescott's signature, former Chief of Fordyce Police Ronnie Poole's signature, and ASP Lieutenant Jerry Bradshaw's signature.  It indicated that Vaughn initiated conversations with Prescott and Vaughn eventually confessed.  It does not mention that the Sheriff had incentivized Prescott to elicit a confession.  Although it was known by law enforcement and the prosecution that Prescott had recorded conversations with Vaughn, the statement made no mention of this fact.  Jimerson's original trial counsel confirmed on April 26, 2015, that the evidence was not made available before trial and was suppressed by the prosecution.  Bad faith can be shown by proof of an official animus or a conscious effort to suppress exculpatory evidence.  United States v. Bell, 819 F.3d 310, 318 (7th Cir. 2016) (quotations and citations omitted); United States v. Collins, 799 F.3d 554, 569 (6th Cir. 2015) (quoting United States v. Jobson, 102 F.3d 214, 218 (6th Cir. 1996)).

Without the recording, we cannot ascertain its significance.  We do not know what Prescott said to Vaughn to elicit the confession.  We do not know if Prescott suggested details to Vaughn.  We do not know if the recorded confession was consistent with the in-court confession.  We do not know if Vaughn reluctantly and nervously confessed and implicated others, or if he willingly and confidently confessed and implicated others.  It could be that the recording was merely cumulative and corroborative of Vaughn's in-court statements.  It could be that the recording demonstrated Vaughn was coerced or influenced to implicate others out of fear that he would be put to death if convicted.  What we can conclude on this record is the failure to make any mention of the fact that Prescott recorded conversations with Vaughn in a handwritten statement prepared by one of the law enforcement officers for Prescott's signature combined with the failure to disclose the recording is evidence of a conscious effort to suppress evidence.  The deliberate omission is indicative of bad faith.  Because of the successful efforts of law enforcement and the prosecutor to conceal and destroy the recording, Jimerson lacked any evidence of bad faith, or in other words a good faith basis to pursue a Youngblood claim, until her

-14-

counsel was given access to Prescott's handwritten statement.  The factual predicate for her <u>Youngblood</u> claim was developed on January 7, 2015, at the earliest.  She asserted her <u>Youngblood</u> claim within the one-year limitations period.

We conclude that Jimerson's <u>Youngblood</u> and actual innocence claims are timely under 28 U.S.C. § 2244(d)(1)(D), but her <u>Brady</u> claim is not.

2.     *John Brown, Jr.*

Our analysis of the timeliness of Brown's claims is less complicated.  We find the State's argument that Brown failed to exercise due diligence in presenting his claims because his attorney did not uncover information about the informant during cross-examination of Vaughn unavailing.  While evidence is "new" if it was not available at the time of trial through the exercise of due diligence, <u>Kidd v. Norman</u>, 651 F.3d 947, 952 (8th Cir. 2011), due diligence does not require a defendant to root out information that the State has kept hidden.  See <u>Dennis v. Sec., Penn. Dep't of Corr.</u>, 834 F.3d 263, 293 (3d Cir. 2016).  The State cannot play "hide and seek" with information it was required to disclose and then accuse defense counsel of lacking due diligence.  <u>See id.</u>  Due diligence does not require defense counsel to possess psychic abilities and discover potentially favorable evidence during trial that the State chose to conceal, particularly when defense counsel specifically requested disclosure of the evidence now at issue.

As to the issue of when Brown learned or should have learned about his claims, the Innocence Project that represented Early is separate from the Midwest Innocence Project representing Brown.  The Midwest Innocence Project agreed to represent Brown in June 2016, at Jimerson's evidentiary hearing.  There is no evidence from which we can conclude that Brown learned or could have learned the factual predicate for his actual innocence claim before Early's counsel revealed that Early

-15-

had confessed. Early's counsel testified at Brown's evidentiary hearing that she never talked to any of the co-defendants and the first time she disclosed her client's confession was via email to counsel on December 22, 2015.

There is nothing in the record to suggest that Jimerson's counsel at the Legal Clinic was communicating with Brown during the course of her investigation or when she filed her habeas petition. The State has cited no authority for its assertion that due diligence obligates a defendant to monitor his co-defendant's court filings for information that could give rise to post-conviction relief. Such a requirement would go beyond the statutory requirement of due diligence, particularly when the petitioner, like Brown, was indigent, had been incarcerated for over 20 years, and had no means for funding an investigator or attorney.

In Anjulo-Lopez, we explained that due diligence required a defendant to check his own docket entries to ensure that his attorney had filed an appeal. Anjulo-Lopez v. United States, 541 F.3d 814, 818 (8th Cir. 2008). A requirement that a defendant stay informed about his own case is notably different than being held responsible for knowing what is occurring in a co-defendant's case. "[D]iligence can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize that he has an interest in challenging the prior conviction." Johnson v. United States, 544 U.S. 295, 308 (2005). The earliest possible date for which the limitations period under § 2244(d)(1)(D) started running was December 22, 2015, the day Early's counsel revealed to co-defendants' counsel that Early had confessed and taken sole responsibility for the crimes. After being informed about the confession, Brown had a duty to make reasonable efforts to discover the facts supporting his actual innocence claim and other potential claims. The record demonstrates that Brown discovered the predicate facts for his constitutional claims at Jimerson's June 2016 evidentiary hearing. We find the claims in Brown's petition filed on December 21, 2016, were filed within one year of discovering the factual predicate for each claim.

-16-

We conclude that Brown's claims[9] were timely filed under 28 U.S.C. § 2244(d)(1)(D).

## B.   Exhaustion and Procedural Default

Setting aside for a moment the claims of actual innocence which may be excepted from the procedural default doctrine or reviewed under the miscarriage-of-justice exception, we consider whether the State waived its non-exhaustion defense. Here, the State, through the Attorney General, was involved in both the state proceedings and federal post-conviction proceedings.  Arkansas provides by statute that the attorney general is to be the attorney for "all state officials, departments, institutions, and agencies" and shall "maintain and defend the interests of the state in matters before the United States Supreme Court and all other federal courts."  Ark. Code. Ann. §§ 25-16-702, 703.  The State asserted defenses of timeliness and procedural default in its response to Brown's and Jimerson's petitions.  The State, however, affirmatively waived exhaustion before the district court when, in its response to Jimerson's petition, it asserted: "Respondent also admits that Jimerson has no unexhausted, non-futile state remedies available to her."  The same admission was made in response to Brown's petition.  A waived defense "is one that a party has knowingly and intelligently relinquished."  See Wood v. Milyard, 566 U.S. 463, 470 n.4 (2012).  We are "not at liberty" to revive a waived exhaustion defense.  Id. at 466, 474.

While the State argued procedural default at length in its opening brief, procedural default may be excused by an adequate showing of cause and prejudice.

---

[9]Assuming the hypothetical, yet-to-be recognized actual innocence "freestanding" claim is recognizable in a habeas petition.  See McQuiggin, 569 U.S. at 392 (noting the actual innocence exception, but declining to decide that it should be recognized as a freestanding claim).

-17-

Our analysis on the merits of the <u>Youngblood</u> claims would dovetail with the prejudice prong.  Since the merits are discussed later in this opinion, we do not repeat those findings here other than to note Brown and Jimerson have satisfied the prejudice prong.  As to the other prong, the Supreme Court has determined that "cause" is shown when "(a) the prosecution withheld exculpatory evidence; (b) the petitioner reasonably relied on the prosecution's open file policy as fulfilling the prosecution's duty to disclose such evidence; and (c) the [State] confirmed petitioner's reliance on the open file policy by asserting . . . petitioner had already received 'everything known to the government.'"  <u>Strickler v. Greene</u>, 527 U.S. 263, 289 (1999).  Because Brown and Jimerson have made the necessary showing of external impediments outside of their control that prevented them from raising their claims, including the prosecution's concealment of evidence, misstatements about evidence, destruction or loss of evidence, and reliance on an open-file policy that the prosecution knew prevented them from discovering critical evidence, the petitioners have established cause.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Ivy v. Caspari</u>, 173 F.3d 1136, 1141 (8th Cir. 1999) (explaining cause excusing procedural default can be shown by government non-action as well as government interference).  Brown and Jimerson have made an adequate showing excusing procedural default as to their <u>Youngblood</u> claims.

## C.   <u>Merits of the Timely Filed Claims</u>

### 1.   *Actual Innocence*

"'Actual innocence' means factual innocence, not mere legal insufficiency." <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998).  Even assuming the Supreme Court would recognize actual innocence as an independent constitutional claim upon which habeas relief can be granted, the petitioner would carry an extraordinarily high burden of proof,  requiring more convincing proof than the "gateway" standard of

-18-

whether it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  Dansby v. Hobbs, 766 F.3d 809, 816 (8th Cir. 2014) (cleaned up).  The allegations must be supported by "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial."  Schlup, 513 U.S. at 324.

Brown's and Jimerson's actual innocence claims rest on the credibility of Early's confession and its potential impact on a reasonable juror.  The magistrate judge in Jimerson's case found Early's confession "questionable."  The magistrate judge in Brown's case found it "simply not reliable." (emphasis in original).  The district judges adopted the magistrate judges' fact-finding.  Brown's original trial counsel testified that the notion that Early could repeatedly stab and then put Holmes' body in the trunk of her car without getting blood on him, as he averred in his affidavit, was "probably not probable, given the nature of the crime and the scene."

Both magistrate judges also noted the timing of Early's confession, which occurred on the heels of new DNA testing that might not only exclude other co-defendants, but definitively establish Early's involvement.  It simply does not follow that because Early admitted to committing the crimes, Jimerson, as an accomplice driving the car to and from the robbery/murder, and Brown, as another participant in the robbery and murder, could not have been involved.  The State presented circumstantial evidence from a number of witnesses that placed all of the co-defendants together on the night of the crime.  While this circumstantial testimony along with Vaughn's recanted confession and now Early's confession all come with their fair share of credibility issues, nothing has been presented during these habeas proceedings, either individually or in combination, that would establish that Brown or Jimerson can meet the "gateway" standard of actual innocence, let alone demonstrate they are factually innocent.

-19-

   2.    *Youngblood Claims*

   We have determined that both Brown and Jimerson have alleged a timely constitutional violation under Youngblood.   In the dissent in Davis v. Ayala, Justice Sotomayor, noting that her "disagreement with the Court does not stem from its discussion of the standard of review," summarized when habeas relief is warranted for a constitutional violation:

> [A] federal court can grant habeas relief only when it concludes that a constitutional error had a  substantial and injurious effect or influence on either a jury verdict or a trial court decision.  Later, O'Neal v. McAninch, 513 U.S. 432 (1995), clarified that this standard is satisfied when a reviewing judge is in grave doubt about whether the error is harmless; that is, when the matter is so evenly balanced that [a judge] feels himself in virtual equipoise as to the harmlessness of the error.  Put differently, when a federal court is in equipoise as to whether an error was actually prejudicial, it must treat the error, not as if it were harmless, but as if it affected the verdict (*i.e.,* as if it had a substantial and injurious effect or influence in determining the jury's verdict).

576 U.S. 257, 135 S. Ct. 2187, 2211 (2015) (Sotomayor, J., dissenting) (cleaned up).

   The deputy prosecuting attorney,[10] who told law enforcement that the recording could not be used at trial, did not testify at either Brown's evidentiary hearing or Jimerson's evidentiary hearing.  While it is the petitioners' burden to establish bad faith, the State makes no claim that the recording was preserved for trial, or that it was destroyed in accord with the prosecution's or law enforcement's normal practice or as a matter of routine sometime after trial.  The reasonable inference to be drawn from the evidence in the record is that the recording was lost or destroyed well before

_____

   [10]Since his role as prosecutor, he has been a judge on the Arkansas Court of Appeals beginning in 2011 until elected to the Arkansas Supreme Court in 2014.

-20-

trial.  On May 16, 1991, the prosecutor responded to defense counsel's discovery requests that specifically sought information about recordings and informants. Although the recording was made on March 24, 1991, approximately five weeks later, the prosecutor made no mention of Prescott nor did he indicate there was a tape with recorded conversations between Prescott and Vaughn.  Unlike other cases in which this court has rejected a Youngblood claim, the uncontroverted evidence in this case indicates the recording was lost or destroyed before trial.  See e.g., Ferguson v. Roper, 400 F.3d 635, 638 (8th Cir. 2005) (concluding no Youngblood violation when the undisclosed evidence "existed until long after the trial").

The State argues that bad faith is absent in this case because "all indications are that the police and the prosecutor thought the evidence was inculpatory, not exculpatory."  The State's argument is unsupported by the record.  After law enforcement and the deputy prosecutor discussed the recording, the prosecutor advised that the recording was inadmissible.  The testimony from Sheriff Ford and Chief of Police Poole was not that the prosecutor thought the evidence was inculpatory, but that it could not be used or "wouldn't have evidentiary value." Although the substance of the recording is not entirely clear, what the recording contained appears to be significant enough that law enforcement and the prosecution worked together to intentionally conceal its existence from the defense.  That intent is demonstrated in several ways.  One way is the prosecutor's decision to provide, at a minimum, misleading answers to defense counsel's discovery requests, but more accurately classified as untruthful answers.  Another way is the prosecutor's decision not to preserve the recording after he found out about it and opined it was inadmissible.[11]  In addition, law enforcement assisted the prosecution's efforts to

---

[11]Both district court judges specifically found that the deputy prosecutor destroyed the recording.  The State argues that these findings are clearly erroneous. Regardless of who lost or destroyed the recording, the same bad faith standard applies to both prosecutors and law enforcement officers.  Villasana v. Wilhoit, 368 F.3d 976, 980 (8th Cir. 2004).

conceal the existence of the recording by putting together a statement for Prescott to sign that deliberately left out any mention that a recording took place.  The existence of the recording was also omitted from the state police report, which failed to identify Prescott as an informant.  Taken together, the uncontroverted evidence establishes bad faith.  Cf. Hallmark Cards, Inc. v. Murley, 703 F.3d 456, 462 (8th Cir. 2013) (explaining bad faith existed when plaintiff "would undoubtedly have benefitted from producing actual documents and examining their contents," but the defendant deleted a number of documents related to the lawsuit just hours before the scheduled computer inspection).

Vaughn's mental functioning has been called into question.  Without the informant evidence, defense counsel could do little to challenge the veracity of Vaughn's confession, or, at a minimum, raise questions of credibility inherent in a cooperating informant.  Without the recording, Brown and Jimerson lost the ability to argue to the jury that Vaughn's confession was influenced or perhaps even enticed by an informant who stood to gain complete dismissal of his pending felony drug charge.  Under certain circumstances, it is permissible to draw an adverse inference against the government when it destroys evidence.  See United States v. Davis, 690 F.3d 912, 925 (8th Cir. 2012), vacated on other grounds by 570 U.S. 913 (2013) (noting an adverse instruction for spoliation in a criminal case may be warranted if the evidence establishes an inference that the police acted improperly by destroying evidence); United States v. Houston, 548 F.3d 1151, 1155 (8th Cir. 2008) (addressing argument requesting an adverse credibility finding against the government for failing to preserve a video); United States v. Iron Eyes, 367 F.3d 781, 786–87 (8th Cir. 2004) (analyzing claim that an adverse inference instruction was justified due to the police's acquiescence to evidence destruction).

Under these particular circumstances where the prosecutor and law enforcement acted in concert to not only conceal the contents of the recording but also effectively concealed the fact that a recorded conversation took place, an adverse

Appellate Case: 18-2873   Page: 22   Date Filed: 04/29/2020 Entry ID: 4907792

inference may be drawn and it is appropriate to weigh the value in favor of Brown and Jimerson.  Accordingly, under the O'Neal standard, we are required to treat the constitutional violation as if it had substantial and injurious effect or influence on the jury's verdicts.  Having found a constitutional violation that warrants habeas relief, we need not resolve Brown's other remaining constitutional claims.

## III.   CONCLUSION

We reverse, in part, as to certain claims and we affirm, in part, as to certain claims.  We reverse the district court's finding that Brown met the actual innocence gateway exception. We affirm the district court's finding that Brown established a meritorious Youngblood violation.  We reverse the district court's finding that Jimerson presented a timely Brady violation.  We affirm the district court's finding that Jimerson established a meritorious Youngblood violation, but failed to demonstrate actual innocence.  Having each established a constitutional violation that we find had a substantial and injurious effect or influence on the jury's verdicts, we affirm the grant of habeas relief to Brown and Jimerson.

_____

# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
## St. Louis, Missouri 63102

**Michael E. Gans**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

April 29, 2020

Ms. Rachel Marie Kemp
ATTORNEY GENERAL'S OFFICE
200 Catlett-Prien Building
323 Center Street
Little Rock, AR  72201-0000

Mr. Asher Steinberg
ATTORNEY GENERAL'S OFFICE
200 Catlett-Prien Building
323 Center Street
Little Rock, AR  72201-0000

      RE:  18-3174  Tina Jimerson v. Dexter Payne
            18-2873  John Brown, Jr. v. Dexter Payne

Dear Counsel:

      The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

      Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

                               Michael E. Gans
                               Clerk of Court

CMD

Enclosure(s)

cc:   Mr. John Brown Jr.
      Ms. Tricia Bushnell
      Ms. Erin Cassinelli

Ms. Karen L. Daniel
Ms. Kelly Hook Fields
Ms. Brooke Jackson Gasaway
Mr. Kent G. Holt
Ms. Tina Jimerson
Ms. Andrea L. Lewis
Mr. Jim McCormack
Ms. Rachel K. Wester

District Court/Agency Case Number(s):   5:15-cv-00208-BSM
                                         5:16-cv-00381-BRW

Appellate Case: 18-2873   Page: 2   Date Filed: 04/29/2020 Entry ID: 4907792

**United States Court of Appeals**
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

April 29, 2020

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

      RE:  18-3174  Tina Jimerson v. Dexter Payne
           18-2873  John Brown, Jr. v. Dexter Payne

Dear Sirs:

      A published opinion was filed today in the above case.

      Counsel who presented argument on behalf of the appellant was Asher Steinberg, AAG, of Little Rock, AR. The following attorney(s) appeared on the appellant brief of Dexter Payne was  Rachel Marie Kemp, AAG, of Little Rock, AR. Additional attorneys appearing on the appellant brief of Dexter Payne were Kent G. Holt, AAG, Little Rock, AR, and Kelly Fields, AGG, Little Rock, AR.

      Counsel who presented argument on behalf of the appellee Tina Jimerson in Case No. 18-3174 was Andrea L. Lewis of Chicago, IL.  Also appearing on the brief in 18-3174 was Karen L. Daniel of Chicago, IL.  Counsel who presented argument on behalf of John Brown in 18-2873 was Tricia Bushnell, of Kansas City, MO.

      The judge who entered judgment in the district court in case No. 18-3174 was Brian S. Miller, upon the findings and recommendations of U.S. Magistrate Judge Jerome T. Kearney. The judge who entered judgment in case No. 18-2873 was Billy Roy Wilson, upon the findings and recommendations of U.S. Magistrate Joe J. Volpe. The judgment of the district court was entered on September 28, 2018 in No. 18-317r and on August 21, 2018 in case No. 19-2873.

      If you have any questions concerning this case, please call this office.

                        Michael E. Gans
                        Clerk of Court

CMD
Enclosure(s)
cc:  MO Lawyers Weekly
        District Court/Agency Case Number(s):  5:15-cv-00208-BSM
                                       5:16-cv-00381-BRW

## Abigail Temple

| | |
|---|---|
| **From:** | ca08ml_cmecf_Notify@ca8.uscourts.gov |
| **Sent:** | Wednesday, April 29, 2020 10:11 AM |
| **Subject:** | 18-3174 Tina Jimerson v. Dexter Payne "Signed Opinion Filed" (5:15-cv-00208-BSM) |

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.**

**Eighth Circuit Court of Appeals**

**Notice of Docket Activity**

The following transaction was filed on 04/29/2020

**Case Name:**    Tina Jimerson v. Dexter Payne

**Case Number:**    18-3174

**Document(s):**    Document(s)

**Docket Text:**
OPINION FILED - THE COURT: Raymond W. Gruender, Jane Kelly and Ralph R. Erickson
AUTHORING JUDGE:Ralph R. Erickson (PUBLISHED) [4907792] [18-3174, 18-2873] (Catherine Dolan)

**Notice will be electronically mailed to:**

Ms. Tricia Bushnell: tbushnell@themip.org
Ms. Erin Cassinelli: erin@lcarklaw.com, michael@lcarklaw.com, mal@lcarklaw.com, office@lcarklaw.com, jack@lcarklaw.com
Ms. Karen L. Daniel: k-daniel@law.northwestern.edu
Ms. Kelly Hook Fields: kelly.fields@arkansasag.gov, christeen.payne@arkansasag.gov, laura.beatty@arkansasag.gov
Ms. Brooke Jackson Gasaway: brooke.gasaway@arkansasag.gov, laura.beatty@arkansasag.gov, christeen.payne@arkansasag.gov
Mr. Kent G. Holt, Assistant Attorney General: Kent.Holt@arkansasag.gov, christeen.payne@arkansasag.gov, laura.beatty@arkansasag.gov
Ms. Rachel Marie Kemp: rachel.kemp@arkansasag.gov, christeen.payne@arkansasag.gov, laura.beatty@arkansasag.gov, theresa.griffin@arkansasag.gov
Ms. Andrea L. Lewis: andrea.lewis@law.northwestern.edu
Mr. Jim McCormack, Clerk of Court: ared_appeals@ared.uscourts.gov
Mr. Asher Steinberg: asher.steinberg@arkansasag.gov
Ms. Rachel K. Wester: rwester@themip.org
MO Lawyers Weekly: michaelh@mesjassociates.com, clash@molawyersmedia.com
West Publishing: us08@westdcs.west.thomson.com

**Notice will be mailed to:**

Mr. John Brown, Jr.
4505 W. San Miguel Avenue
North Las Vegas, NV 89032

Ms. Tina Jimerson
2530 Highway 273
Fordyce, AR 71742

The following document(s) are associated with this transaction:
**Document Description:** Published Opinion filed
**Original Filename:** 183174P.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=04/29/2020] [FileNumber=4907792-0]
[842e3863f3ed6349412520f19a27812d0dc5095ce446c98165361d6ff5cda593f056c906a38d8b8716496d16886f398a52f
23564f64550314208b6f01deffe0e]]

**Document Description:** Counsel Opinion Letter
**Original Filename:** /opt/ACECF/live/forms/CathyDolan_183174_4907792_CounselOpinionLetters_285.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=04/29/2020] [FileNumber=4907792-1]
[5cd4b99bf5f64e5201ca74cf27ed935dafc2efadb7b1515e051f6563fd29f77ee20fcb277b5154579ea869c6a2a84f68b27e4
9eb3562fe27ab9d0a48ad8cd1e7]]
**Recipients:**

- Mr. John Brown, Jr.
- Ms. Tricia Bushnell
- Ms. Erin Cassinelli
- Ms. Karen L. Daniel
- Ms. Kelly Hook Fields
- Ms. Brooke Jackson Gasaway
- Mr. Kent G. Holt, Assistant Attorney General
- Ms. Tina Jimerson
- Ms. Rachel Marie Kemp
- Ms. Andrea L. Lewis
- Mr. Jim McCormack, Clerk of Court
- Mr. Asher Steinberg
- Ms. Rachel K. Wester

**Document Description:** Letter To Publishing
**Original Filename:** /opt/ACECF/live/forms/CathyDolan_183174_4907792_LettersToPublishing_284.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=04/29/2020] [FileNumber=4907792-2]
[a0d7c5689230b83290e5c8c7c4bd3990bc1bbec55b3520ca24ac3d3337a7d6cac52803ef611a07e313bb259060ba5bfffb9
850db36dff96a2ae03464d0a1d582]]
**Recipients:**

- MO Lawyers Weekly
- West Publishing

The following information is for the use of court personnel:

**DOCKET ENTRY ID:** 4907792
**RELIEF(S) DOCKETED:**
  for publication
**DOCKET PART(S) ADDED:** 6521886, 6521889, 6521888, 6521890